**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 1:21-cr-00386-TNM-2** |
| | : | |
| **PAULINE BAUER** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION**
**FOR SENTENCING ADJUSTMENT**

The United States, by and through its attorney, the United States Attorney for the District of Colombia, respectfully submits this response to the defendant's motion for sentencing adjustment based on the newly enacted U.S.S.G. § 4C1.1. ECF No. 184. As an initial matter, the government notes that the defendant was sentenced on May 30, 2023, and the defendant did not appeal. Thereafter, on November 13, 2023, more than five months after her sentencing, the defendant filed her motion for "Downward Departure or Variance." ECF No. 184. Further, 18 U.S.C. § 3582(c) provides that "The court may not modify a term of imprisonment once it has been imposed" except under certain enumerated circumstances not present here. For the following reasons, defendant's sentence should not be modified.

I.     **FACTUAL BACKGROUND**

Bauer participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.8 million dollars in losses.

Bauer joined the storming of the police line on the East Plaza area of the United States Capitol. Subsequently she was part of the mob that forced the United States Capitol Police (USCP)

officers on the East Plaza to retreat to the East Rotunda door to try to prevent the rioters from

infiltrating the Capitol. After about forty minutes of struggle, Bauer, with her codefendant William

Blauser, was able to force herself into the Capitol Building. Once inside the Capitol Building and

in the Rotunda, Bauer accosted Metropolitan Police Department (MPD) officers who were trying

to secure the Rotunda. Bauer physically accosted at least one officer and made incendiary threats

to kill Nancy Pelosi, then the Speaker of the House of Representatives. Bauer was a short distance

from Speaker Pelosi's office suite at that time.


## II.     RETROACTIVE APPLICATION OF U.S.S.G. § 4C1.1

U.S.S.G. § 4C1.1 provides for a two-level reduction for offenders with no criminal history

points who are not subject to any of ten exclusionary criteria, including:

- § 4C1.1(2):  the defendant did not receive an adjustment under § 3A1.4 (Terrorism);
- § 4C1.1(3):  the defendant did not use violence or credible threats of violence in connection with the offense;
- § 4C1.1(4):  the offense did not result in death or serious bodily injury;
- § 4C1.1(7):  the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense).

Section 4C1.1 may be applied retroactively to previously sentenced inmates, pursuant to

U.S.S.G. § 1B1.10. Such a reduction may occur as provided in 18 U.S.C. § 3582(c)(2), which

provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, a reduction pursuant to U.S.S.G. § 1B1.10 is not mandatory. Instead, a "court *may* reduce the term of imprisonment, after considering the factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(2) (emphasis added).  Additionally, any proceeding under Section 3582(c)(2) is not a full resentencing, so a court is not permitted to reconsider other sentencing determinations left unaltered by the Section 4C1.1 amendment. *Dillon v. United States*, 560 U.S. 817, 825-826 (2010); U.S.S.G. § 1B1.10(a)(3).

A court considering a motion for a sentence reduction due to § 4C1.1 must follow a two-step process. *Id.* at 826. First, the court must determine whether the defendant is eligible for a sentence reduction. A defendant is only eligible under § 4C1.1 reduction if:  (1) the defendant has no criminal history points; (2) the defendant is not subject to any of the exclusionary criteria; (3) the amended guidelines range is lower than the range applied at the original sentencing hearing; and (4) the defendant did not previously receive a sentence at or below the bottom of the now-amended range other than for providing substantial assistance. *See* U.S.S.G. §§ 1B1.10, 4C1.1; *Dillon v. United States*, 560 U.S. at 827.

Even if step 1 is satisfied, a sentencing reduction is not required. Instead,  § 1B1.10 directs that before reducing a defendant's sentence, the court must "consider the factors set forth in 18 U.S.C. § 3553(a) in determining … whether a reduction in the defendant's term of imprisonment is warranted" as well as "the extent of such a reduction"  U.S.S.G. § 1B1.10 app. note 1(B)(i), (ii); *see also id.* Background ("The authorization of such a discretionary reduction ... does not entitle a defendant to a reduced term of imprisonment as a matter of right.").

In particular, the Court must consider public safety considerations, and may consider information regarding the post-sentencing conduct or situation of the defendant, whether positive or negative. *See*, *e.g.*, *United States v. Darden*, 910 F.3d 1064, 1068 (8th Cir. 2018). Section

1B1.10 application note 1(B)(ii) directs that "[t]he court shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment." Application note 1(B)(iii) further directs that "[t]he court may consider post-sentencing conduct of the defendant that occurred after the imposition of the original term of imprisonment." That means the Court may, but is not required, to consider the defendant's post-sentencing rehabilitation, if any. *See United States v. Rodriguez-Rosado*, 909 F.3d 472, 481 (1st Cir. 2018); *United States v. Banderas*, 858 F.3d 1147, 1150 (8th Cir. 2017).Such conduct would include social media posts and other statements relating to the Capitol riot on January 6, 2021.

If the court decides in its discretion to grant a reduction in sentence, it generally may not reduce the term of imprisonment to a term that is less than the minimum of the new guideline range. U.S.S.G. § 1B1.10(b)(2)(A).  Thus, the Court may not reduce the sentence below the range provided by the amended guideline, and "in no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served." U.S.S.G. § 1B1.10(b)(2)(C).

As part of Amendment 821 to the Guidelines, § 4C1.1's retroactive application takes effect on February 1, 2024. *See* U.S.S.G. § 1B1.10(e)(2). While courts are not prohibited from conducting sentence reduction proceedings and entering orders related to § 4C1.1 before February 1, 2024, they may only do so provided that any order reducing the defendant's term of imprisonment has an effective date of no earlier than February 1, 2024. *Id*. [As a practical matter, this means that any defendant scheduled for release from prison before February 1, 2024, is not eligible for a reduction in their sentence under § 4C1.1].

## III.    NO SENTENCING REDUCTION IS WARRANTED

### A.  Bauer is not eligible for a reduction under § 4C1.1.

Bauer is not eligible for the sentencing reduction under the Section 4C1.1 amendment.  The defendant's personal use of violence or credible threats of violence against people or property under a totality of the circumstances.  Bauer physical assaulted officer T.C. by laying hands on him and telling him "Fuck you, you fucking [- - - -]."



Exhibit 213

As Officer T.C. testified:

So if it wasn't audible enough, this is Ms. Bauer stating, in her words, "Fuck you, you fucking [- - - -]" as I instruct her to back up. So at this point, she's no longer passive-aggressive; she's become aggressive. And the fact that she's pushing my efforts to -- and using a civil disturbance technique, which is to push our batons forward as we state for the crowd to back up, she's pushing back against my baton, telling me to back up.

And from Officer Lapitsky's point of view, you see that she uses both hands to push against me.

Transcript of trial, pg. 130.

Further, Bauer made a credible threat of violence against Speaker of the House Nancy Pelosi.  Once inside the U.S. Capitol, Bauer went to the Rotunda.  On the west side of the

Rotunda, Bauer confronted MPD officers protecting the west entrance to the Rotunda.   Bauer

yelled at the officers "We want Nancy Pelosi, that's who we want."



Exhibit 212

Bauer then began screaming "Bring them out, You bring them out or we're coming in."   Bauer

continued to yell, stating "They're criminals.  They need to hang." She screamed at the officers

"Bring Nancy Pelosi out here now.  We want to hang that fucking bitch. Bring her out."  At this

point, Bauer was only feet from Speaker Pelosi's office:



*See* ECF No. 171, pg. 6

Bauer's threat to hang Speaker Pelosi was real, imminent, and placed the Speaker of the House in danger.  Publicly released video shows rioters searching for Speaker Pelosi on January 6, 2021. *See* https://www.cbsnews.com/sanfrancisco/news/video-jan-6-rioters-searched-for-speaker-pelosi-after-her-evacuation-from-capitol/

Finally, Bauer is not eligible for a reduction under § 4C1.1 for the further reason that the January 6 riot was a violent attack that threatened the lives of legislators and their staff, interrupted of the certification of the 2020 Electoral College vote count, did irrevocable harm to our nation's tradition of the peaceful transfer of power, caused more than $2.9 million in losses, and injured more than one hundred police officers, causing serious bodily injury in many cases. Every rioter, whether or not they personally engaged in violence or personally threatened violence, contributed to this harm. *See, e.g., United States v. Rivera*, 21-cr-60 (CKK), ECF No. 62 at 13 ("Just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood. Only when all of the floodwaters subside is order restored to the field. The same idea applies in these circumstances. Many rioters collectively disrupted congressional proceedings and each individual

rioters contributed to that disruption. Because [defendant's] presence and conduct in part caused the continued interruption to Congressional proceedings, the court concludes that [the defendant] in fact impeded or disrupted the orderly conduct of Government business or official functions").

**B.  Even if the Court determines that § 4C1.1 applies, it should not reduce Bauer's sentence.**

"The grant of authority to the district court to reduce a term of imprisonment is unambiguously discretionary," even when the guideline range is actually reduced.  *United States v. Vautier*, 144 F.3d 756, 760 (11th Cir. 1998). A district court has "substantial discretion" in deciding whether to reduce a sentence. *United States v. Young*, 555 F.3d 611, 614 (7th Cir. 2009). Accordingly, many courts have denied sentence reductions even in situations where guideline amendments lowered the sentencing ranges.[1]

Here, the Section 3553(a) factors counsel against granting a sentence reduction.   In addition to the circumstances of the defendant's conduct here, Bauer perjured herself while testifying.  Fittingly, while announcing the guilty verdicts, this Court stated, "I also on the subject

---

[1] *See, e.g.*, *United States v. Wilson*, 716 F.3d 50, 53 (2d Cir. 2013) (denial of sentence reduction was not an abuse of discretion, though earlier sentence reduction had been granted despite defendant's prison misconduct, and defendant had not engaged in any new prison misconduct); *United States v. Styer*, 573 F.3d 151, 154-55 (3d Cir. 2009) (denial based on nature of original criminal conduct); *United States v. Stevenson*, 332 F. App'x 261 (6th Cir. 2009) (reduction denied despite eligibility under amendment, based on disciplinary infractions in prison, and lengthy criminal record); *United States v. Dunn*, 728 F.3d 1151, 1159-60 (9th Cir. 2013) (NEED PAREN); *United States v. Arceneaux*, 297 F. App'x 819 (10th Cir. 2008) (reduction denied due to disciplinary record in prison); *United States v. Melton*, 2008 WL 1787045 (W.D.N.C. 2008) (denial based on nature of offense); *United States v. Craig*, 2008 WL 1775263 (W.D.N.C. 2008) (denial based on the facts of the case); *United States v. Suell*, 2008 WL 2845295 (N.D. Tex. 2008) (motion denied because defendant benefitted from a favorable plea agreement in which charges were dismissed and the sentence was reduced); *United States v. Reynolds*, 2008 WL 2367254 (S.D. W. Va. 2008) (motion denied because defendant's criminal conduct was "nothing short of egregious"), aff'd, 309 F. App'x 703 (4th Cir. 2009). *See also United States v. Marion*, 293 F. App'x 731 (11th Cir. 2008) (unpublished) (district court's consideration of the defendant's criminal history was proper, even when denying a reduction motion, even though this was the same factor it considered at his original sentencing hearing).

of sentencing will consider a Government motion for departure in light of the Defendant's obstruction while on the witness stand." Transcript of verdict, Jan. 24, 2023, pg. 17. This Court also already significantly deviated from other, similar, cases in sentencing Bauer to a term of Twenty-Seven (27) Months of Incarceration.

In addition, the government notes that , the Sentencing Commission enacted § 4C1.1 based on recidivism data for offenders released in 2010. *See* U.S. SENT'G COMM'N, RECIDIVISM OF FEDERAL OFFENDERS RELEASED IN 2010 (2021), available at https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010. Given the unprecedented nature of the Capitol attack, there is no reason to believe this historical data is predictive of recidivism for defendants who engaged in acts of political extremism on January 6. This is particularly so given the degree to which individuals, including defendants who have been sentenced, continue to propagate the same visceral sentiments which motivated the attack.

Thus, due to the unique nature of the January 6 riot, the harms caused by the January 6 riot, and the significant need to deter future mob violence, the government submits that even if the Court finds that § 4C1.1 applies, the Court should nevertheless deny a sentence reduction. Such treatment would recognize the unique nature of the criminal events of January 6, 2021, coupled with the overwhelming need to ensure future deterrence, despite a person's limited criminal history.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ James D. Peterson*_____
James D. Peterson
Trial Attorney
Bar No.: VA 35373
United States Department of Justice
1331 F Street N.W.
 6th Floor
Washington, D.C. 20530
Desk: (202) 353-0796
James.d.peterson@usdoj.gov

## CERTIFICATE OF SERVICE

On this 13th day of December, 2023, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

*/s/ James D. Peterson*_____
TRIAL ATTORNEY